**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| WILLIAM B. REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV721 |
| | ) | |
| FREDERICK HUBBARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, a prisoner of the State of North Carolina, filed a Complaint seeking injunctive relief and damages pursuant to 42 U.S.C. § 1983 for alleged federal constitutional violations due to lack of access to legal papers, destruction of grievances, and failure to assign jobs. (See Docket Entry 2 at 4-7.)[1] The Complaint names five employees of Scotland Correctional Institution ("SCI") as defendants: 1) Frederick Hubbard, Administrator I; 2) Albert Thomas, Administrator II; 3) Brad Perritt, Captain; 4) Issac Baldwin, Unit Manager; and 5) Teresa Jones, Assistant Unit Manager. (Id. at 2.) More than 21 days after both the filing of the Complaint (see id. at 1) and of Defendants' Answer (see Docket Entry 15 at 6), Plaintiff sought leave to amend to add two more SCI employees as defendants: 1) J. Herron, Acting Administrator I; and 2) Gary Crutchfield, Acting Administrator II. (Docket Entry 24 at 1.) As support for this request, Plaintiff asserted that said

---

[1] The Complaint consists of pages from a standard form Section 1983 complaint (that bear their own pagination) interspersed with additional pages (on which Plaintiff placed no numbers), followed by various attachments. (See Docket Entry 2 at 1-41.) To minimize confusion, this Memorandum Opinion will cite to the page numbers appearing in the CM/ECF footer of the docketed Complaint.

individuals "have authorities to remove [the] policies in violation of [his] rights." (<u>Id.</u> at 2.) Plaintiff also has filed an "Order to Cause for a [sic] Injunction" with supporting brief and declaration (Docket Entries 26-28), a "Motion to Set an [sic] Trial Date" (Docket Entry 40), and a "Second Motion for Appointment of Counsel" (Docket Entry 41).[2] Defendants have moved for summary judgment. (Docket Entry 31.) For the reasons that follow, Defendants' summary judgment motion should be granted and, to the extent it constitutes a motion, Plaintiff's "Order to Cause for a [sic] Injunction" should be denied. Given that determination, Plaintiff's motions seeking addition of defendants, establishment of a trial date, and appointment of counsel will be denied.

<u>BACKGROUND</u>[3]

Plaintiff "was indicted for [] first-degree murder [in Forsyth County, North Carolina,] . . . tried capitally, found guilty as charged, and sentenced to a mandatory term of life imprisonment." <u>State v. Reeves</u>, 343 N.C. 111, 112, 468 S.E.2d 53, 54 (1996). The North Carolina Supreme Court affirmed that conviction and sentence on April 4, 1996. <u>See</u> <u>id.</u> at 113, 468 S.E.2d at 55. Plaintiff pursued a collateral challenge in the state court system, but the North Carolina Supreme Court refused to review the trial court's denial of relief. <u>See</u> <u>State v. Reeves</u>, 539 S.E.2d 5 (N.C. 1999).

---

[2] The Court (per United States Magistrate Judge Donald P. Dietrich) denied an earlier request for appointment of counsel. (<u>See</u> Docket Entries 16, 21.)

[3] As required by authority set forth below, <u>see</u> <u>infra</u>, p. 13, all facts come from the record as viewed in the light most favorable to Plaintiff.

Plaintiff thereafter unsuccessfully attacked his murder conviction and life sentence in this Court via a petition under 28 U.S.C. § 2254 for a writ of habeas corpus. See Reeves v. Beck, No. 1:99CV931-JAB (M.D.N.C. Sept. 21, 2000) (unpublished). He filed no notice of appeal. See Docket, Reeves, No. 1:99CV931-JAB. Over five years later, Plaintiff filed two identical petitions under Section 2254 challenging his foregoing state conviction and sentence, both of which this Court (per now-Chief Judge James A. Beaty, Jr.) dismissed for failure to obtain authorization from the United States Court of Appeals for the Fourth Circuit under 28 U.S.C. § 2244 to file a successive habeas petition. See Reeves v. Mitchell, No. 1:05CV895-JAB-RAE (M.D.N.C. Feb. 16, 2006) (unpublished); Reeves v. Mitchell, No. 1:05CV1046-JAB-RAE (M.D.N.C. Feb. 23, 2006) (unpublished).[4] Both judgments denied a certificate of appealability. See id. Moreover, Plaintiff failed to file a notice of appeal in either case. See Docket, Reeves, No. 1:05CV895-JAB-RAE; Docket, Reeves, No. 1:05CV1046-JAB-RAE.

"On April 3, 2007 Plaintiff . . . was placed on disciplinary segregation [at SCI]." (Docket Entry 2 at 4; see also Docket Entry 15 at 3.)[5] On April 7, 2007, Plaintiff submitted a "Request for Information Form" at SCI stating that he would "like to receive all

---

[4] During the pendency of the first of those two actions (and two days before Plaintiff instituted the second such action), the Fourth Circuit denied Plaintiff's motion under Section 2244 for authorization to pursue a successive habeas action. In re Reeves, No. 05-489 (4th Cir. Nov. 28, 2005) (unpublished).

[5] For ease of reading, quotations from the Complaint reflect standard capitalization conventions even where the Complaint did not use them.

of [his] legal papers, letters, files, [and] court documents [from the unit in which he previously had been housed]." (Docket Entry 2 at 23.) According to that request, Plaintiff had a "deadline" in an "ongoing legal case" and had "be[en] trying to get [his] legal papers, letters, etc. since 4/3/07." (Id.)

On May 2, 2007, Plaintiff filed a grievance (#4860-R07-095) at SCI complaining about lack of access to and/or loss of "legal documents," as well as other personal property, occasioned by his transfer to segregation. (Id. at 11.) Defendant Jones responded (in a document apparently signed for by Plaintiff on June 3, 2007) that Plaintiff "may have any legal materials that is [sic] currently active in court . . . [and that] a complete inventory [would] be conducted of all of [Plaintiff's] personal property and compared to [the form that was completed when Plaintiff was transferred to segregation on April 3, 2007]. No further action is recommended." (Id. at 25.)[6] Plaintiff unsuccessfully appealed that decision through the available administrative process. (See id. at 25, 32.)

_____

[6] That response is consistent with a memorandum entitled "APPROVED ITEMS FOR SEGREGATION" signed by Defendant Perritt on August 27, 2007, which lists "Legal Material for Current Case Only" and states that an "[i]nmate should be allowed to demonstrate what material is currently pending in the courts or has [sic] a court deadline and provided with that material / or that material made available to him." (Docket Entry 2 at 24.) Documents that Plaintiff attached to an unauthorized summary judgment sur-reply indicate that, on April 18 and 30, 2007, he submitted grievance forms at SCI raising similar complaints about lack of access to and/or loss of his legal papers, but that (unlike Plaintiff's grievance of May 2, 2007) Defendant Jones rejected those forms because they involved "[m]ore than one incident" and did not follow grievance "procedures." (Docket Entry 36-2 at 1, 4.) In continuation pages attached to the rejected grievance forms, Plaintiff acknowledged that Defendant Baldwin had found and had returned to Plaintiff some of the legal papers in question. (See id. at 2, 5.)

On August 8, 2007, Plaintiff completed a "Claim for Damages under Tort Claims Act" against the North Carolina Department of Correction ("NCDOC") that the North Carolina Industrial Commission ("NCIC") received on August 10, 2007. (Id. at 12.) In that document, Plaintiff asserted that, on April 3, 2007, at SCI, he suffered damages of "over $350,000 by reason of the negligent conduct of . . . C/O S. Morgan [and] C/O W. Simons." (Id.) Specifically, Plaintiff claimed that, upon his placement in segregation, he lost access to his "legal property," that said "legal property" was "lost or destroyed," and that (as a result) he "missed [his] filing deadline of [his] legal case." (Id.)[7]

In August 2007, Plaintiff filed another grievance at SCI (#4860-R07-138) regarding the loss of his legal papers, to which Defendant Jones responded on August 20, 2007 (which response Plaintiff signed to initiate further review on August 22, 2007). (Id. at 5, 27.)[8] In that response, Defendant Jones stated: "[I]t is regrettable that your legal material was lost and every effort is being made to look for the material; however, as you mentioned, staff has assisted you in replacing other lost property. No further action recommended." (Id. at 27.) That response was confirmed by an SCI Administrator (apparently – based on the signature – Defendant Hubbard) and, on August 31, 2007, Plaintiff

---

[7] The NCIC's final ruling indicates that the $350,000+ figure reflects the estimate attorney Joseph Cheshire gave Plaintiff "for obtaining representation to attempt to re-open his Federal appeal." (Docket Entry 32-2 at 2.)

[8] Neither Plaintiff nor Defendants attached said grievance to their pleadings or summary judgment filings. (See Docket Entries 2, 15, 31, 32, 34-36.)

signed the response form indicating he wished to appeal to the NCDOC. (Id.)

On October 9, 2007, Plaintiff filed grievances (#4860-R07-187 and #4860-B07-383) in the two units of SCI where he was assigned following and before his transfer to segregation (i.e., the "Red Unit" and "Blue Unit," respectively) about his lost property, including legal papers, as well as a report from an unidentified individual that Plaintiff's grievance #4860-R07-138 was destroyed (rather than sent to the NCDOC). (See id. at 28, 29.)[9]

On October 16, 2007, Defendant Jones responded to grievance #4860-R07-187 as follows:

> [Plaintiff], your complaint has been received. [Plaintiff], your grievance 4860-R07-138 left the Red Unit on 09/04/07 to be sent to the IGRB [NCDOC's Inmate Grievance Resolution Board]. Your source that states they saw your grievance destroyed is mistaken and gave you false information. Grievances are not destroyed unless a [grievance response form] has a mistake and I re-type the information. This is prior to any signatures. [Plaintiff], as an act of good faith, your alleged missing hygiene products were replaced with donated items from programs and [Defendant] Baldwin brought what legal mail was stored on the Blue Unit to you. As far as Red Unit Staff, we have gone as far as we can to accommodate you and have referred you to the appropriate staff for further assistance. Please be assured grievances are investigated and responded to as soon as possible.

(Id. at 28.) That same day, Plaintiff signed the foregoing response form to reflect his desire for further review. (Id.) Defendant Thomas affirmed Defendant Jones's response on October 21, 2007, and, by signature dated December 28, 2007, Plaintiff appealed

---

[9] Neither Plaintiff nor Defendants attached said grievances to their pleadings or summary judgment filings. (See Docket Entries 2, 15, 31, 32, 34-36.)

that decision to the NCDOC. (Id.) As to grievance #4860-B07-383, an SCI official assigned to the Blue Unit echoed the response by Defendant Jones (on October 21, 2007), Plaintiff appealed (on October 24, 2007), Defendant Thomas upheld that response (on October 29, 2007), and Plaintiff sought review by the NCDOC (on November 2, 2007). (Id. at 29.)[10]

Through its IGRB, the NCDOC considered Plaintiff's allegations regarding his lost property and the handling of his related grievances, including Plaintiff's assertion (apparently in letters to the NCDOC, which do not appear in the record) that he was "being retaliated against by staff." (Id. at 33.) In a "Findings and Disposition Order" dated February 7, 2008, an IGRB official gave this accounting of what occurred as a result:

> We met with [Plaintiff] and [SCI] officials on December 11, 2007 to discuss these issues and to respond to the seriousness of [Plaintiff's] allegations. In response to the above mentioned grievances, [SCI] Administrators have agreed to assist in the replacement of [Plaintiff's] transcripts and other legal material. It was explained by [Defendant] Jones, that [Plaintiff's] missing hygiene products were replaced with donated items from programs. We have talked to [SCI] Administrators and advised them of the importance of complying with the Administrative Remedy Procedure [regarding the handling of grievances]. The Director of Prisons has been advised and has also authorized an investigation at [SCI].
>
> This examiner has reviewed this grievance and having found merit to [Plaintiff's] complaint, please be aware that corrective action is in progress. Therefore, this

_____

[10] Plaintiff also filed a similar grievance (#4860-R08-024) on September 26, 2007, that SCI officials did not process until January 2008, when they apologized for the late response, reiterated their commitment to find the lost items if possible, and promised to address any staff negligence found. (See Docket Entry 2 at 31.) When Plaintiff appealed, Defendant Thomas affirmed the foregoing response. (Id.)

grievance as well as the above mentioned grievances are considered resolved by [t]he [IGRB].

(Id.)

Plaintiff thereafter wrote to Defendant Hubbard expressing his understanding that the IGRB had directed SCI "to pay the cost to get all known legal documents back and have the deadline reopened, in order to file [Plaintiff's] appeal before the courts." (Id. at 38.) The letter asserted that Plaintiff had provided SCI officials with documentation "from the law office who could get all of the legal documents & eyewitnesses [sic] statements, plus have [his] appeal deadline reopened before the courts . . . [as well as] the cost of this law firm's fees to handle documents of a first-degree murder case conviction like [Plaintiff's]." (Id.) According to the letter, Plaintiff also gave Defendant Thomas a list of the other lost personal property and Defendant Thomas "stated [it] would be replaced into [Plaintiff's] account." (Id.) The letter closed with a demand that Defendant Hubbard confirm whether SCI would pay the costs Plaintiff had outlined. (Id.)

By letter dated March 3, 2008, Defendant Hubbard responded as follows:

> All canteen items that you had listed you will be reimbursed at the amount of $62.07. It will take approximately three (3) weeks for these funds to be placed in your trust fund account. This is the normal process for reimbursement of any amount exceeding $50.00.
>
> Mrs. K.G. Banos, Deputy Clerk of Superior Court Forsyth County, Winston-Salem, NC has researched your file # 94 CRS 18026 and indicated that there are a total of 169 pages of transcript. [SCI] has arranged for Forsyth County to copy and mail to you the transcript at the cost to [SCI] of $44.00.

> I do apologize for any inconvenience that you may have endured doing [sic] this incident. Please do not hesitate to contact this office for any other questions/ concerns you may have.

(Id. at 41.)[11]

On July 26, 2008, Plaintiff submitted a grievance (#4860-B08-294) at SCI asserting that his request for promotion to medium custody status was rejected in retaliation for appealing to the IGRB about the handling of his earlier grievances regarding his lost property. (Id. at 15-16.) In that grievance, Plaintiff did not reference any alleged retaliatory denial of job placements. (See id.) An SCI official (apparently – based on the signature – Defendant Baldwin) then made this reply (on August 8, 2008):

> [I]nvestigation reveals Mr. Crutchfield Asst. superintendent of Programs reported [Plaintiff] has been promoted to medium custody on three previous occasions only to be demoted back to closed custody again for poor behavior. He is serving a life sentence and is not eligible for parole consideration until 5/21/2014. He has thirty four infractions on his record at this time. He is not in school nor assigned to a job at this time. Custody decisions are made at the facility level and no observation time is needed. No Further action recommended at this time.

(Id. at 17 (errant capitalization in original).) Plaintiff requested further review (on August 11, 2008), an SCI Administrator

_____

[11] In a grievance dated May 22, 2008, Plaintiff objected to SCI's response and demanded that SCI "forward the total cost of what th[e] law firm is asking to [his] account." (Docket Entry 2 at 18.) Neither Plaintiff nor Defendants attached documentation regarding the disposition of that grievance to their pleadings or summary judgment filings. (See Docket Entries 2, 15, 31, 32, 34-36.)

ruled the prior response sufficient (on August 27, 2008), and Plaintiff appealed to the NCDOC (on September 6, 2008). (<u>See</u> <u>id.</u>)[12]

Plaintiff dated his Complaint in the instant case as signed on October 8, 2008 (<u>id.</u> at 8), but this Court received the Complaint on October 7, 2008 (<u>id.</u> at 1). By order dated July 8, 2009 (and stamped filed July 17, 2009), the NCIC ordered the NCDOC to pay Plaintiff $150.00 in damages. (<u>See</u> Docket Entry 32-2 at 1, 5.) In rendering that decision, the NCIC made these findings of fact:

1) "[o]n 3 April 2007, [P]laintiff was placed in segregation and his property was removed from his cell and placed into storage by Correctional Officers S. Morgan and W. Simons" (<u>id.</u> at 2);

2) a standard inventory form "lists the property that was removed, including a number of canteen items, assorted correspondence, pictures, and legal documents" (<u>id.</u>);

3) the NCDOC "either replaced or paid [P]laintiff the amount of $62.07 for the canteen goods . . . [and] Plaintiff stated he received the money in question and ha[d] no further claim to the loss of his property beyond that of legal documents" (<u>id.</u>);

4) "[a]t the time of the property loss, [P]laintiff was engaged in the Federal appellate process, attempting to obtain review of his conviction . . . [and] the lost legal documents were trial transcripts, Federal appellate court documents, and two affidavits from witnesses" (<u>id.</u>);

---

[12] Neither Plaintiff nor Defendants attached documentation of the disposition of that appeal to their pleadings or summary judgment filings. (<u>See</u> Docket Entries 2, 15, 31, 32, 34-36.)

5) "Plaintiff has contacted the law firm of Cheshire, Parker, Schneider, Bryant & Vitale to inquire of the costs for obtaining representation to attempt to reopen his Federal appeal . . . [and] attorney Joe Cheshire [has] quote[d] an ultimate cost of $365,900.00 for plaintiff's case" (id.);

6) "Plaintiff was able to obtain copies of the lost transcripts . . . [at a cost to him] of $44.00" (id.);

7) "One of the witnesses who provided [P]laintiff with a statement has passed away[,] . . . [t]he second witness appears to be available to provide a replacement affidavit[, and] [t]he correspondence and Federal appellate documents are replaceable" (id.); and

8) the NCDOC "has acknowledged the loss of [P]laintiff's property while in [its] possession" (id.).[13]

Defendants thereafter moved for summary judgment in this case and attached to their supporting brief various affidavits, including from Defendants Hubbard, Jones, Perritt, and Baldwin. (See Docket Entries 31, 32-3, 32-4, 32-9, 32-10.) Immediately after the filing of Defendants' summary judgment motion, the Clerk

---

[13] The NCIC also concluded as a matter of law that the NCDOC "was negligent and violated the applicable standard of care in the handling of [P]laintiff's personal property proximately resulting in the loss his [sic] personal property and legal materials," Plaintiff was "entitled to the fair market value of his unreturned items of personal property and legal materials on the date of its possession by [NCDOC] officers," and "Plaintiff [wa]s not entitled to have his legal fees for an appellate review of his case paid for by [the NCDOC]." (Docket Entry 32-2 at 4.) Plaintiff appealed the NCIC's decision to the North Carolina Court of Appeals. (See id. at 6-8.) The parties subsequent summary judgment filings do not document the disposition of that appeal. (See Docket Entries 34-36.) Nor did a legal database search unearth any such information.

mailed Plaintiff a letter explaining that he had 30 days "to file a 20-page response in opposition to [said motion] . . . accompanied by affidavits setting out [his] version of any relevant disputed material facts or . . . other responsive material." (Docket Entry 33 at 1.) The letter specifically cautioned Plaintiff that a "failure . . . to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [Defendants'] contentions [we]re undisputed . . . ." (<u>Id.</u>) Within the allotted time, Plaintiff filed a response in opposition without any affidavits or other evidence. (<u>See</u> Docket Entry 34.)[14]

On December 7, 2009, after Defendants replied (Docket Entry 35) and Plaintiff filed an unauthorized sur-reply (Docket Entry 36) as to the summary judgment issues in the instant case, Plaintiff instituted yet another action via Section 2254 attacking his state murder conviction and sentence, which this Court (per Chief Judge Beaty) dismissed for failure to obtain authorization from the Fourth Circuit under Section 2244 to pursue a successive habeas petition. <u>See</u> <u>Reeves v. Keller</u>, No. 1:09CV942-JAB-LPA (M.D.N.C. Jan. 21, 2010) (unpublished). The Fourth Circuit thereafter again denied a request from Plaintiff for such authorization. <u>See</u> <u>In re Reeves</u>, No. 10-103 (4th Cir. Feb. 9, 2010) (unpublished).

---

[14] Plaintiff appended a "Verification" to the end of said filing, but said "Verification" did not proclaim any of the factual assertions within the filing as sworn or made under penalty of perjury. (<u>See</u> Docket Entry 34 at 18.) The contents of said filing thus do not constitute evidence for purposes of analyzing the summary judgment record. <u>See</u> <u>In re French</u>, 499 F.3d 345, 358 (4th Cir. 2007) ("Dr. Freedenburg's statement was neither sworn under oath nor made under the penalty of perjury. As a result, the statement fails to meet the most basic requirement of form [now codified in Federal Rule of Civil Procedure 56(c)].").

## Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Accord Matvia v. Bald Head Island Mgt., Inc., 259 F.3d 261, 266 (4th Cir. 2001) ("The court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor.").

"[T]here is no burden upon 'the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact.' Rather, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) (internal emphasis omitted). Conversely, "[t]he party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986)).  See also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

Access to Courts Claim

According to the Complaint, Defendants Hubbard and Thomas enacted a policy at SCI that denied Plaintiff physical custody of legal papers upon his placement in segregation in April 2007 and thereby "violated Plaintiff's rights under the Federal Constitution . . . [b]y depriving Plaintiff of his rights of access to the courts."  (Docket Entry 2 at 4 (emphasis added).)  The United States Supreme Court long ago recognized "that prisoners have a constitutional right of access to the courts."  Bounds v. Smith, 430 U.S. 817, 821 (1977).  However, "an inmate alleging a violation of Bounds must show actual injury . . . [to satisfy] the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  Lewis v. Casey, 518 U.S. 343, 349 (1996).  Plaintiff has failed to come forward with any evidence that would allow a reasonable fact-finder to conclude he suffered an actual injury as a result of any SCI policy that affected his access to legal papers in April 2007.

As outlined in the Background section, see supra, pp. 3-11, the attachments to the Complaint and other record materials reflect that the only specific harm Plaintiff ever described suffering due to lack of access and/or loss of his legal papers in April 2007

concerns his alleged inability to meet deadlines in a federal habeas proceeding. However, the records of this Court (summarized above, see supra, pp. 3, 12) conclusively demonstrate that:

1) Plaintiff's first federal habeas case ended in October 2000, when he failed to give notice of appeal within 30 days of the Court's denial of his Section 2254 petition on September 21, 2000, see Fed. R. App. P. 4(a)(1)(A) (1999);

2) Plaintiff's second and third federal habeas cases ended in March 2006, when he failed to give notice of appeal within 30 days of the Court's dismissal of his Section 2254 petitions on February 16 and 23, 2006, see Fed. R. App. P. 4(a)(1)(A) (2005); and

3) Plaintiff did not commence his fourth federal habeas case until December 7, 2009.

Accordingly, when Plaintiff went into segregation in April 2007, he had no ongoing federal habeas case and had already missed the deadline for appealing the dismissals of his second and third federal habeas cases by more than a year. Any denial of access to and/or loss of Plaintiff's legal papers occasioned by SCI's segregation policies in April 2007 therefore did nothing to interfere with Plaintiff's ability to make timely filings in any ongoing federal habeas case. Moreover, shortly before the dismissal of Plaintiff's second and third federal habeas cases, and again, shortly after the dismissal of his fourth federal habeas case, the Fourth Circuit denied Plaintiff permission to pursue successive habeas actions. See In re Reeves, No. 10-103; In re Reeves, No. 05-489. Plaintiff has offered no basis to conclude

that he had any viable argument to obtain such authorization at any time (and certainly not in April 2007).  (See Docket Entries 2, 34, 36.)  "Depriving someone of a frivolous claim . . . deprives him of nothing at all . . . ."  Lewis, 518 U.S. at 353 n.3.

Under these circumstances, the Court should enter summary judgment for Defendants on Plaintiff's "access to courts" claim based on the lack of any evidence of any actual injury.[15]

### Retaliation Claim

The Complaint alleges that, because Plaintiff filed grievances at SCI regarding lack of access to and/or loss of his property and filed a complaint with the NCIC about such matters, Defendants Perritt, Baldwin, and Jones retaliated against him by destroying

---

[15] To the extent Plaintiff's summary judgment response contends that SCI's policies limiting the property an inmate may possess in segregation undermined his ability to file "lawsuits" (in addition to "conviction appeals") (Docket Entry 34 at 4), his claim still fails as a matter of law.  The right of access to courts "does not extend 'further than protecting the ability of an inmate to prepare a petition or complaint.'"  Wrenn v. Freeman, 894 F. Supp. 244, 248 (E.D.N.C. 1995) (quoting Wolff v. McDonnell, 418 U.S. 539, 576 (1974)) (first set of internal quotation marks from earlier Eastern District of North Carolina case omitted).  Plaintiff's Complaint and summary judgment filings fail to identify any civil suit he could not file because of any SCI policy.  (See Docket Entries 2, 34, 36.).  Moreover, while at SCI, Plaintiff prepared the Complaint in this case, as well as the complaint he filed in the NCIC.  (See Docket Entry 2 at 2, 12.)  The record thus cannot support a finding that any policy at SCI compromised Plaintiff's right to access the courts for civil litigation.  Nor can Plaintiff maintain an "access to courts" claim based on the theoretical prospect that SCI's segregation policies might someday harm his ability to file a petition or complaint, particularly given his transfer away from SCI in 2010 (see Docket Entries 37, 38).  See Lewis, 518 U.S. at 349 ("It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. . . .  [T]he distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly.").

his grievances (rather than forwarding them to the NCDOC for further review) and by denying him prison jobs. (See Docket Entry 2 at 5-7.) "Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the [retaliatory] act, when taken for different reasons, would have been proper." American Civil Liberties Union of Md., Inc. v. Wicomico Cnty., Md., 999 F.2d 780, 785 (4th Cir. 1993). The filing of a lawsuit involves the exercise of constitutional rights (i.e., the First Amendment rights to petition the government and to access the courts), id.; however, the submission of internal prison grievances does not constitute constitutionally-protected activity, Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

"A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, inter alia, that she suffered some adversity in response to her exercise of protected rights." Wicomico Cnty., 999 F.2d at 785 (emphasis added). Accordingly, "[w]here [a] plaintiff claims that he suffered retaliation for filing a lawsuit, he must show that the retaliatory acts adversely impacted his right to access the courts." Talbert v. Hinkle, 961 F. Supp. 904, 911 (E.D. Va. 1997) (citing Wicomico Cnty.). "In addition, [a] plaintiff must come forward with specific evidence 'establishing that but for the retaliatory motive the complained of incidents would not have occurred.'" Scott v. Kelly, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000) (quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)) (internal brackets and ellipses omitted) (emphasis added), aff'd,

-17-

6 Fed. Appx. 187 (4th Cir. 2001).  Moreover, the Fourth Circuit has cautioned that "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation [in prison] must therefore be regarded with <u>skepticism</u> . . . ."  <u>Adams</u>, 40 F.3d at 74 (emphasis added).  In this case, Plaintiff has not come forward with specific evidence to overcome such skepticism and to allow a reasonable fact-finder to conclude that Defendants Perritt, Baldwin, and Jones engaged in unconstitutional retaliation in connection with Plaintiff's grievances or work options in prison.

As an initial matter, "there is no constitutional right to participate in grievance proceedings."  <u>Id.</u> at 75.  Indeed, "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."  <u>Id.</u>  Any interference in Plaintiff's participation in the NCDOC's grievance process thus falls short of the requisite adversity needed to make out a federal constitutional retaliation claim, particularly where, as here, Plaintiff has not shown that any such interference negatively impacted his ability to litigate.  <u>See</u> <u>Oliver v. Braxton</u>, 20 Fed. Appx. 247, 247-48 (4th Cir. 2001) ("Oliver alleges that in retaliation for filing lawsuits against them, prison officials have barred his access to the grievance process.  Even if Defendants refused to file the grievances in retaliation, Oliver has no cognizable injury on the face of the present record.") (citing <u>Adams</u> and <u>Wicomico Cnty.</u>).  Further, as detailed in the Background section, <u>see</u> <u>supra</u>, pp. 7-8, the NCDOC

received and addressed Plaintiff's grievances regarding his property, as well as the handling of his grievances, and thus the record cannot support a finding of any material interference by Defendants Perritt, Baldwin, and Jones.

As to the alleged denial of job assignments, Plaintiff has "merely and conclusorily assert[ed] that [such activity] occurred as part of [D]efendants' general scheme of retaliation," Adams, 40 F.3d at 75, and has failed to offer "specific evidence establishing that but for the retaliatory motive the complained of incidents would not have occurred," Scott, 107 F. Supp. 2d at 709 (internal brackets, ellipses, and quotation marks omitted). Moreover, undisputed record evidence reflects that "the number of [SCI] inmates exceeds the number of job assignments [at SCI]," that Plaintiff obtained a kitchen job on June 6, 2007 (after he began filing grievances about his lack of access to and/or the loss of his property), and that he only lost the opportunity to work in the kitchen on August 6, 2007 (before he executed the lawsuit he filed with NCIC), when he was caught stealing. (See Docket Entry 32-6 at 2, 4.) Such circumstances doom Plaintiff's retaliation claim. See, e.g., Brent v. Kupec, No. Civ. A. WMN-04-3746, 2005 WL 1075476, at *2 (D. Md. May 5, 2005) (unpublished) ("The existence of an independent reason for removing Plaintiff from his [prison] job and subsequent failure to rehire him for the same job, should be sufficient to refute his claim that there was retaliatory animus involved in those decisions."), aff'd, 159 Fed. Appx. 484 (4th Cir. 2005). Finally, because Plaintiff has not established that any

denial of work opportunities had any negative effect on his pursuit of constitutionally-protected litigation, his retaliation claim fails. See Talbert, 961 F. Supp. at 911-12 (ruling that prisoner's firing from job, even if motivated by his filing of lawsuit, failed to support retaliation claim because of lack of evidence that job loss "adversely impacted his right of access to the courts").

CONCLUSION

Plaintiff has failed to identify record evidence that would allow a reasonable fact-finder to determine that Defendants deprived him of access to the courts and/or engaged in unconstitutional retaliation as his Complaint alleged. The Court thus should enter summary judgment for Defendants and should decline to order any relief for Plaintiff. In light of the foregoing recommendation, Plaintiff's request to add two new defendants fails as futile, see Foman v. Davis, 371 U.S. 178, 182 (1962) (recognizing futility as grounds to deny amendment under Fed. R. Civ. P. 15(a)),[16] and no need exists to set a trial date and/or to appoint counsel for Plaintiff.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 31) be **GRANTED** and that, to the extent it constitutes a motion, Plaintiff's "Order to Cause for a [sic] Injunction" (Docket Entry 26) be **DENIED**.

---

[16] For reasons stated in Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr.19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation as to said motion.

**IT IS ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint (Docket Entry 24), "Motion to Set an [sic] Trial Date" (Docket Entry 40), and "Second Motion for Appointment of Counsel" (Docket Entry 41) are **DENIED**.

                              /s/ L. Patrick Auld
                           **L. Patrick Auld**
                **United States Magistrate Judge**

September 23, 2011